May it please the court, I'm Assistant Attorney General Candy Dibble and I represent the department in this matter, the appellants. Your honors, we're here today to ask that this court find that the lower court abused its discretion when it issued and granted a preliminary injunction in this matter because it based its decision on a clearly erroneous findings of facts. Let me say this, you know, after the district court granted the preliminary injunction, there was a request for a stay, right? Done by the district court. The request for a stay was done by the... Was denied. Correct, your honor. And then there was a motion for a stay pending appeal as well, correct? Correct, your honor. And we denied that. Correct, your honor. So did the state comply with the district court's order? It recently complied last week, your honor. So what are we doing here? I mean, the only order was to have an independent orthopedic consultation. That's the only order there is. Your honor, we would argue that in essence that this has now become a reoccurring issue because this is the third case in front of the western district court. There's only one order before us. The order says that, first of all, it's disturbing that neither party told us that this actually occurred, if it actually occurred, and what actually occurred. I guess we'll have to ask your opposing counsel whether he agrees that there was compliance. But the only order is an order to have an external single, as I understand it, orthopedic consultation. Period. Period. Correct, your honor. And you are now telling me it occurred. It occurred last week. Well, so we're supposed to hear a case because in some other case somebody might order something else? Your honor, this is in essence a reoccurring issue. And in this particular case... I mean, you don't like it, but you didn't get a stay. You, I guess, admirably and perhaps knowing you're going to have to stand up here today, because I was going to ask the very same question and Judge Bias not ask it first, complied. So I don't see what's before us. Are you talking about a recurring issue in other cases? It's going to come up again? Correct, your honor. And in this particular matter, the court issued its decision on April 10th. We filed our appeal on April 15th. We filed our brief at the beginning of May. In essence, unless we basically refuse to comply with the lower court's order... You got five for a stay and you didn't get one. Right. Correct. But if we don't then comply with the lower court's order, we're in essence precluded from ever appealing a preliminary injunction, your honor, because although we filed our brief, we timely appealed this matter. We filed our brief in a timely fashion. We are either left kind of with Hobson's choice of once the stay gets denied by this court... Because presumably a motions panel decided that you didn't have a probable chance of success on the merits, right? So it's not you haven't been heard, you've been heard. We've been heard on the motion to stay. We have not been heard on our appeal regarding the granting of the preliminary injunction in this matter, your honor. And it's our understanding that the motions... I guess you could have refused to comply. We're not going to put our... Correct. I mean, we wouldn't put ourselves in that position in front of the district court. We just wouldn't do that and refuse to comply with their order. And in this case, when the Ninth Circuit made a decision as to whether or not to stay the preliminary injunction, that motion was based on my understanding in essence of emergent circumstances, and they didn't find... Did we do that after you briefed the case? No. We filed the stay at the same time, or I think that was issued... Our filing was issued before we filed our brief in this matter and before they filed their response. They did not... The court... We filed our motion to stay, but the court didn't issue its decision until after the briefs, I think in the middle of when the briefing was being filed. So you're saying you didn't have an opportunity to address the mootness point in the briefs? Correct, your honor. But this isn't... What category of non-mootness do you put this in? It's not... It's not the capable of repetition yet evading review question, because it's not like you haven't had a court decision. You had a court decision by the district court on a preliminary injunction, and you had a decision here on a stay, both of which concluded that you didn't have a probability of success from the merits. So what kind of non-mootness would you say this is? Your honor, in essence, because it's... And you haven't briefed it. Correct. Your honor, it's our position that it's going not just in this particular matter, but it will continue to be a reoccurring issue in regards to preliminary injunctions issued against the department. Well, what's the common thread here? The common thread is that each... It's not like pregnancy. It's that each one of the individuals in which the Western District Court has granted a preliminary injunction have been represented by Mr. Balson. Maybe he should have been hired. And I would not... Believe me, I don't argue against that. I think he's a great attorney. But what it appears to happen is that for some reason you could have the exact same type of case brought by a pro se offender, which a majority of these cases are. You could have the exact same set of facts that are brought forth by a pro se inmate, which is a majority of what happens. But what appears to now be kind of the reoccurring issue is that when Mr. Balson represents one of these individuals, that the court seems to be giving much more credence... That's why people have lawyers. That's a good reason for having a lawyer. Maybe we should hear from Mr. Balson about whether his view is that there's been compliance, because if you both agree there's been compliance, there's not much point to going on. But if he tells me there's not compliance, then we should hear what you have to say. And it merits. We'll let you come back. Sure. Okay. Don't worry. Thank you, Your Honors. I was notified by my client last Tuesday that he was finally seen by an orthopedist on Monday. So a week ago today. So the portion of Judge Layton's order requiring the department to send Mr. Francis out for an orthopedic referral has been satisfied. There's a small follow-up component of the order which requires the department to share the orthopedist's report with Mr. Francis and with us, and that hasn't happened yet. I don't presume that's because they're holding out on us, but I think probably the report hasn't been submitted yet. So technically the order has not been completely satisfied yet. It probably will be in a couple of days. Presumably, yes. I do, however, agree with the State's position that this is an issue that warrants a statement by this Court. In this case, and that this situation is capable of repetition and yet evading review, there's a public interest in this Court resolving the issue. In this case, Mr. Francis is not getting out of prison next month. He's going to be in prison. He has an ongoing injury that's going to require treatment. His condition has now been evaluated. The report, we don't know what the report will say. We're presuming that it prescribes some kind of treatment and the Department of Correction submits it to us. But we can't, there's nothing to review about that because there's no order about that. In other words, the only order we've got is an order that says you've got to send him out for an independent orthopedic evaluation. And whether the evaluation is going to say you have to do something, whether they're going to do it or not do it, is all down the line. We have no facts. We can't review that. Yes, but the recurring... The case isn't over. I mean, you can, the case is certainly not over. But the preliminary injunction seems to be over. There's a difference. We're only talking about the preliminary injunction, not the underlying case, which continues on in the district court. Sure. I recognize that, Your Honor. But the issue that continues to repeat itself in the other cases referenced by counsel and potentially in this case is an issue that is before this Court, and that is the Department of Corrections continues to take the position that if a prisoner's medical provider recommends a certain type of treatment or referral to an outside provider, that since they have this care review committee and they put the request through the care review committee, that that shields them from liability for deliberate indifference under the Eighth Amendment. Their standard that they're using to make these decisions is their offender health plan, not the Eighth Amendment. But is that, how is that here? Well, that's what they are arguing to an appeal, is that they weren't deliberately indifferent. They had it reviewed by the care review committee, and they decided it didn't meet the requirements of their offender health plan, and so they considered the recommendation and they rejected it. And that's all they're required to do, according to them. And that's the process that they're using continually. Well, in this case, the district court judge heard that, rejected it, granted you preliminary injunctive relief. They asked for a stay. He denied it. They came to us, asked for a stay. They put forth their best reasons, presumably, when they asked for the stay, denied, and then they complied. What's left? For us to decide. What are we supposed to decide? That the department's reliance on their care review committee process and their offender health plan as a basis. Yes, they somewhat rely on that. But my understanding is they're not taking a legal position that because they've relied on this health plan, therefore, is there an Eighth Amendment problem. I mean, there are a bunch of smaller factual disputes here where they say they basically make their own findings. He's not an intractable pain. And the question is, A, he's intractable. Was he an intractable pain? You say, yes, he was an intractable pain. They say, you also might say, well, intractable pain is their own standard. It's not actually the Eighth Amendment standard, but there's also a set of factual disagreements as well. So it's very hard to get at any, you know, abstract legal question here. I mean, I understand what you're saying, but that's kind of the undercurrent. It's not really exactly what the case was about. Is that wrong or right? I think it's right. I think that is an undercurrent. It's the underlying theme. It's the reason that this issue keeps coming up in the lower court. Is any of this going to be the ‑‑ it sounds like the ruling that you want is a ruling on the merits in a deliberate indifference, not the kind of ruling that you would get in a preliminary injunction where you look to the harm and the likelihood of success. I mean, for example, you could go to district court now and tee up the issue of whether their reliance on their internal policy is inconsistent with the Eighth Amendment because their policy is inconsistent with the Eighth Amendment. You want an injunction saying they can't rely on their policy anymore. You know, and then we have a case about that. I recognize the point the court is making, and on Tuesday when I heard from my client about this issue, certainly that issue was ‑‑ that issue came up in my mind. Is this court moved? Do we have a duty to notify the court? And ‑‑ Well, as to that, yes, as to both of you. And really ‑‑ Yes. Yes. Well, maybe let's ‑‑ we have you both here. Maybe we should go back to the state where you had eight minutes left on the state side to address the merits of whatever argument you were going to make. So let's hear from the state and we'll finish up. Your Honors, just not the issue of the court granting the preliminary injunction in this matter is at stake in this appeal, but also in essence the court's outright denial of our request for an evidentiary hearing, which I think is also going to be a reoccurring issue. There's no requirement for the district court to grant an evidentiary hearing. Well, I think under the case law that, especially while there's no requirement when a case involves, in essence, a complex state of facts, under the Kinley v. Lundgren decision in this court, the court indicated that if the facts are simple and little time would be taken, a court may be required to hold an evidentiary hearing. And when you read Mr. Francis' brief, he indicates, in essence, that the facts here are simple, that Mr. Francis makes complaints of pain, we ignore those complaints of pain, therefore we somehow are deliberately indifferent under the Eighth Amendment and an injunction, in essence, should be issued. What he argued about Was there any medical evidence that you didn't present to the district court in your opposition to the motion for preliminary injunction? No. You had it all, right? I'm sorry? The district court had everything, right? It did, but it appears what happened was that the magistrate made, in essence, a credibility determination. And that, in essence, is how he made his determination on whether or not to grant the injunction in this matter. And when the U.S. Supreme Court, in essence, in Winter says that a preliminary injunction, in essence, should be an extraordinary measure, it appears that the magistrate, what he did was, rather than make a determination in light of all the facts, that he, in essence, made he wanted to err on the side of caution. And that's not the standard, in essence, that you use when issuing a preliminary injunction in this case. What factual dispute are you talking about? I think that there's two large ones. The first one is that whether or not Mr. Francis would be likely, whether or not there was a likelihood that Mr. Francis would succeed on the merits in this matter. It's a legal determination. What's the factual dispute? The factual dispute is that while Mr. Francis continually makes subjective complaints of pain, nowhere in the record are there objective findings, in essence, to back that up. And when you look at that That's because he never had the image in. That's not true. He's had multiple x-rays. He had an ultrasound in between the August 2011 and the December 2011. Showing that an ultrasound would demonstrate what he was looking for. The ultrasound had no abnormal findings. Right. When the provider took both of these cases to the Care Review Committee back in August of 2011 and December of 2011, she indicated to the Care Review Committee that, in addition to there being no findings in regards to the ultrasound or the x-ray findings, that while he did make complaints of pain, that he was still able to perform his activities of daily living. With his other arm. Correct. Not with the arm that he was complaining about. Well, that's inconclusive. That doesn't prove that he didn't have pain or bad pain. It just proved that he was muddling along. But when you look at the other examination findings, which include no gross deformity and no malalignment of the shoulders, then there's an issue. Didn't Dr. Sawyer say that if this was a private patient, he sure as hell would have said to ask for this MRI? No. Or something very close to that. No. What did he say? Dr. Sawyer, during his deposition, Dr. Sawyer indicated that more than likely, because what Mr. Francis has been pushing is that when he had his MRI back in 2008, there was a slight labral tear that was indicated in the MRI. Also indicated in the MRI were early osteoarthritic changes. And what Dr. Sawyer, after reviewing the records, indicated in his deposition, was that based on the physical examination that he performed of Mr. Francis, that he would not order an MRI in this case. That Mr. Francis more than likely had AC arthritis. And that basically that any other person on the outside streets gets treated with arthritis, with pain medication, and exercises. He would not, in essence, recommend surgery. There would not be a follow-up MRI in this case. What is it that you want us to do now? Still issue a finding that the lower court was clearly erroneous. And that they abused their discretion in granting a preliminary injunction. And that they abused their discretion in failing to grant us an evidentiary hearing when we didn't waive one. And as Mr. Balson said, I think we both take the position that this is going to be a reoccurring issue. And if we cannot get a timely remedy. It's going to go back to the district court. I mean, it's still in the district court. Correct, Your Honor. It's still moving forward, right? Somebody can move for summary judgment. Correct. Right? Yes. So, if you lose or you win, they can appeal? If what's at stake is your process, it doesn't seem to me that you're precluded from other ways of getting that adjudicated. Are there any other questions? No. Okay. Thank you. Did you have anything further you wanted? You had a few minutes left. Did you want to respond to any of these questions about the merits at all? Sure. Of the appeal? Yes, Your Honor. To the extent that the court decides to get to the merits in this case. Of the appeal. Of the appeal. Of the preliminary injunction. Of the preliminary injunction. Yes, Your Honor. Thank you. Which the faces and eyes before me suggest might not have. But on the point of whether the court was required to provide an evidentiary hearing, the authority cited by the State was out-of-circuit authority that the Ninth Circuit has not adopted. And what the International Mulder's case says is that where sharply disputed facts are simple and little time would be required for an evidentiary hearing, proceeding on affidavits alone might be inappropriate. But an evidentiary hearing should not be held when the magnitude of the inquiry would make it impractical. In this case, we would have a hearing being conducted that would require additional discovery, depositions of the medical experts, bringing Mr. Francis from the prison on the Olympic Peninsula to the courthouse. It would not have been a simple hearing. In addition, where counsel states that there's no evidence in the record to corroborate Mr. Francis' subjective complaints of pain, that's simply not true. DOC's own medical providers wrote consistently throughout his records, particularly before this case was filed, that he can't use his right arm and it's obviously painful. Dr. Kenney, who examined him after we sent a demand letter to DOC urging the evaluation, wrote that he can do his activities of daily living with his left arm. He can't use it. He can't use his right arm, and therefore, I won't recommend an evaluation. So in our brief, we have citations to numerous places in the record where DOC's own records and witnesses corroborate Mr. Francis' complaint of pain. It would be very helpful to get a decision from this court to avoid these cases coming up again, and if the court gets the merits, we ask that it affirm the district court preliminary injunction. Thank you. Okay. Thank you, counsel. It's an interesting case. The matter is submitted and ends our session for today.
judges: Schroeder, Paez, Berzon